# United States District Court
# District of Massachusetts

ROBERT ALDRICH,
    Plaintiff,

        v.                       CIVIL ACTION NO. 2009-11282-JLT

TOWN OF MILTON, ET AL.,
    Defendants.

## *REPORT AND RECOMMENDATION ON DEFENDANT MICHAEL BREEN'S MOTION FOR SUMMARY JUDGMENT (#158) AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT MICHAEL BREEN UNDER 42 U.S.C. § 1983 (#160)*

COLLINGS, U.S.M.J.

    The plaintiff, Robert Aldrich ("Aldrich"), and defendant, Michael Breen ("Breen"), have filed cross-motions (##158, 160) each respectively seeking the entry of judgment as a matter of law.

The starting point is the federal claim for an unlawful stop under 42 U.S.C. § 1983. The facts reveal that on March 9, 2007, two citizens in the town of Milton called the Milton Police Department to report home break-ins. (#163 ¶ 6) The first call came at 5:15:48 A.M. with a citizen reporting that someone had tried to break into her house. (#163 ¶ 6) At 5:35:33 A.M., a second citizen called to report that she had seen a man who had tried to get into a neighbor's house run into the backyard at 5:15 A.M. (#163 ¶ 7) This second citizen stated that the man "had an old car that made a lot of noise"...that the man's vehicle was "[j]ust a big SUV...[that] must have been like, navy blue. Or dark. It was dark. And it must have been old, 'cuz I could hear the engine, that's what woke me up, or something wrong with his car." (#163-4 at 10-11) She also reported that the man "raced up to either the expressway or up towards Dorchester." (#163-4 at 12) At 5:38:55 A.M., the Milton Police dispatcher directed an officer to go over to talk with the second citizen and "[j]ust take down information. She doesn't have much." (#163-4 at 13)

At 5:40:19 A.M., the Milton Police dispatcher radioed all units that, with respect to the earlier reported attempted B&E, "the woman reports that it was

an SUV, dark in color, headed north on Granite."[1] (#163-4 at 14) At 5:46:11 A.M., the dispatcher reiterated that "it was a large SUV, dark in color, with a loud exhaust. No description on the person." (#163-4 at 14) The dispatcher also thereafter advised that the suspect had dark clothing and a brown coat. (#163-4 at 15)

Breen, a sergeant in the Milton Police Department, began to drive on Granite Avenue, looking for a vehicle that matched the description given by the second citizen. He drove approximately one quarter of a mile on Granite Avenue and crossed into Boston onto Gallivan Boulevard.

Breen observed an SUV on a side street, Lenoxdale Avenue, facing onto Gallivan Boulevard, stopped about one hundred fifty feet up the street with no headlights on.[2] (#163-6 at 144-145) Breen did "not particularly" consider the circumstances suspicious, but thought "it warranted getting a look." (#163-6 at 147) Breen was past the side street, so had to continue to a traffic light and

---

[1] The plaintiff argues that the second citizen "was able to say only that she saw a car turn right out of Courtland Circle onto Granite Avenue and that it went either onto the expressway or into Boston. She had no way of knowing which direction it took, and Breen admitted that he did not, either." (#202 at 3)

[2] At a suppression hearing, the state Superior Court judge found that when Breen stopped Aldrich at approximately 6:20 A.M. on March 9, 2007, the plaintiff was under no obligation to have his headlights on because Massachusetts law (Mass. Gen. L. c. 90 § 7) requires only that headlights be on up to one half an hour before sunrise, which occurred that day at 5:40 A.M. (#162-15 at 10-11)

make a u-turn. (#163-6 at 147-148) In the meantime, the SUV came down Lenoxdale Avenue and turned onto Gallivan Boulevard heading towards Neponset Circle. (#163-6 at 148) The SUV then turned onto another side street, St. Brendan's Road, went up the street a distance, pulled into a driveway and turned around coming back down St. Brendan's Road toward Gallivan Boulevard. (#163-6 at 152-153)

Breen had "no idea" if the SUV was the one for which they were looking, but it did match the description. (#163-6 at 157) As Breen drove down St. Brendan's Street with the SUV driving towards him in the opposite direction, he had his hand out the window, pointing at the SUV's headlights to inform the driver that the lights were not on.[3] (#163-6 at 155) Breen pulled up so his cruiser and the SUV were window-to-window, and Breen and the occupant of the SUV, Aldrich, had a conversation. (#163-6 at 157-160) While Breen was still "evaluating" the situation in his mind, he asked Aldrich if he had a license and Aldrich handed him a Massachusetts ID card. (#163-6 at 163-164) Because he was blocking the road, Breen took Aldrich's ID card, drove up the road, turned around and pulled up behind the SUV, at which point he radioed the

---

[3] The state Superior Court judge found Breen's claim that he stopped Aldrich "to tell him that his vehicle's front lights were out [was] not credible." (#162-15 at 12)

4

station to do a license check. (#163-6 at 166)  Breen states as an undisputed fact that he "conducted a motor vehicle stop of the Plaintiff on March 9, 2007."[4] (#163 ¶ 4)

The law is clear that Fourth Amendment protections apply in the context of brief investigatory stops of persons or vehicles. *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968); *U.S. v. Brake*, 666 F.3d 800, 804 (1 Cir., 2011); *U.S. v. Camacho*, 661 F.3d 718, 724 (1 Cir., 2011).  To be constitutional and "justif[y] the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21 (footnote omitted);  *Brake*, 666 F.3d at 804 ("[T]he officer must have a particularized and objective basis for suspecting the person stopped of criminal activity, rooted firmly 'in specific and articulable facts.'" (citation omitted); *U.S. v. Hensley*, 469 U.S. 221, 229 (1985)("It is enough to say that, if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion.").  To more fully explain, "[b]ecause the

---

[4] Breen previously testified at a suppression hearing in the state court that he did not stop Aldrich. (#162-15 at 8)

balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in such cases, the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002)(internal citations and quotation marks omitted); *see also Arizona v. Johnson*, 555 U.S. 323, 326 (2009)*; Camacho*, 661 F.3d at 726*; U.S. v. Ramos*, 629 F.3d 60, 65 (1 Cir., 2010), *cert. denied*, 131 S.Ct. 3045 (2011). Further, "[i]n evaluating whether reasonable suspicion existed, we 'look at the totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing.' *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744 (internal quotation marks omitted)." *U.S. v. Monteiro*, 447 F.3d 39, 43 (1 Cir., 2006); *U.S. v. Pontoo*, 666 F.3d 20, 26 (1 Cir., 2011); *Camacho*, 661 F.3d at 726 ("The reasonable suspicion standard is an intermediate, indeterminate standard that requires more than a hunch but less than probable cause"); *U. S. v. McGregor*, 650 F.3d 813, 821 (1 Cir., 2011)("[N]o one-size-fits-all template exists to sketch out whether an officer acted with reasonable suspicion. Rather, courts must gauge its presence in a commonsense, case-by-case way, taking in the whole picture."(citations

omitted)).[5]

In this case, genuine issues of material fact exist as to whether, under the totality of the circumstances, Breen had reasonable suspicion to stop Aldrich. The stop occurred a half an hour or more[6] after the second citizen's call about six to nine tenths of a mile[7] away from the scene of the alleged B&E in Milton on a side street in Boston. It is undisputed that there was other traffic in the area at that time in the morning. (#163 ¶ 25) The description of the vehicle was rather general: a large, dark SUV with a loud muffler. The plaintiff was driving a green Ford Explorer SUV (#163 ¶ 24); there are no undisputed facts submitted by Breen as to whether Aldrich's vehicle had a loud muffler.

The Court rules that in considering all of the circumstances, a jury could find that Breen did not have "specific and articulable facts which, taken together with rational inferences from those facts," *Terry*, 392 U.S. at 21, warranted the

---

[5] Aldrich argues that Breen's extraterritorial stop was illegal under the law of Massachusetts. (#161 at 11-13) For purposes of § 1983, however, the plaintiff also acknowledges that the First Circuit has not resolved the question of "whether an arresting officer's lack of authority under state or federal law to conduct an otherwise constitutionally valid arrest constitutes an unreasonable seizure under the Fourth Amendment" and that "[t]he circuits are divided on this issue." *Santoni v. Potter*, 369 F.3d 594, 598 (1 Cir., 2004); *see also U.S. v. Ryan*, 729 F. Supp.2d 479, 488-489 (D. Mass., 2010). (#161 at 13-14)

[6] On the Incident Report he completed at 07:06 on 03/09/2007, Breen stated that he noticed the SUV on the side street at "approximately 0620." (#163-7) At his deposition, Breen testified that the time on the Incident Report was incorrect and it should have been 5:45 A.M. (#163-6 at 249-250)

[7] The parties dispute the distance between the scene of the reported B&E and the stop.

investigatory stop of Aldrich. Until this threshold issue is determined, the constitutionality of Breen's subsequent actions is open to question.[8] *See, e.g., Camacho,* 661 F.3d at 726-728 ("Evidence obtained during search may be tainted by the illegality of an earlier Fourth Amendment violation, so as to render such evidence inadmissible."); *Monteiro*, 447 F.3d at 50 (all evidence derived from illegal *Terry* stop suppressed). For this reason, Breen's motion for summary judgment must be denied.

Conversely, based on the record facts, the jury could find that Breen did have "specific and articulable facts which, taken together with rational inferences from those facts," *Terry*, 392 U.S. at 21, warranted the investigatory stop of Aldrich. For this reason, the plaintiff's motion for partial summary judgment must be denied.

The matter must be determined by a jury. Accordingly, I RECOMMEND that Defendant Michael Breen's Motion For Summary Judgment (#158) be DENIED. I FURTHER RECOMMEND that Plaintiff's Motion For Partial Summary Judgment Against Defendant Michael Breen Under 42 U.S.C. § 1983 (#160)

---

[8] All of the claims alleged against Breen are federal claims under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985 (*See* #163-1 at 33, C, Counts 1-15); there are no state law claims to be decided separately.

also be DENIED.

The parties are hereby advised that any party who objects to these recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply to file objections shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*
ROBERT B. COLLINGS
United States Magistrate Judge

July 9, 2012.